# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:15-cr-373-1 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| ANTONIO MALONE, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Now before the Court is the motion of defendant Antonio Malone ("Malone") for a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 35 ["Mot."].) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 42 ["Opp'n"].) For the reasons that follow, Malone's motion is DENIED.

## I. BACKGROUND

On April 19, 2016, Malone was sentenced to a term of 71 months imprisonment, after pleading guilty to a two-count information charging Conspiracy Against Rights and Hobbs Act Conspiracy in violation of 18 U.S.C. §§ 241 and 1951, respectively. (4-19-2016 Minutes; Doc. No. 23 ["Judgment"].) Malone was previously employed as a police officer and he used his position to unlawfully seize money and property from individuals during illegal police entries into residences. In furtherance of his crimes, Malone prepared false police reports, and submitted false affidavits to Cuyahoga County Common Pleas judges, as a means of concealing the illegal searches and seizures. As a component of his sentence, the Court ordered Malone to pay a total of $23,333.33 in restitution to his victims and a $200.00 special assessment. (Judgment at 297.)

Malone is currently serving his sentence at Danbury FCI and has a projected release date of April 23, 2021. *See* https://www.bop.gov/inmateloc/ (last visited 6-15-2020).

On May 1, 2020, Malone filed a *pro se* motion for a compassionate release due to COVID-19. In support, he cited generally the circumstances surrounding the pandemic and specially the effectiveness of the efforts by staff at his facility to slow the spread of the virus. On May 4, 2020, the Court appointed the Federal Public Defender's Office ("FPD") to review Malone's filing and determine whether it would consider representing Malone in connection with this motion for a compassionate release. (5-4-2020 Minutes). On June 9, 2020, a representative from the FPD's office advised that the FPD would not be entering an appearance or filing a supplemental motion on Malone's behalf. (Doc. No. 40 (Letter from FPD).)

The Court subsequently directed the government to file a response, which it filed on June 12, 2020. In opposition to Malone's request for immediate release, the government argued that Malone has not fully exhausted his administrative remedies, and that, in any event, he did not meet the requirements under 18 U.S.C. § 3582(c) for a compassionate release.

## II. DISCUSSION

### A. Exhaustion

In his motion, Malone represents that he has "exhausted every option on this level, sending both written, and emailed requests to [the] unit team and a written request to the warden, with no results." (Mot. at 346.) The government insists that this "blanket statement" is insufficient to demonstrate exhaustion. (Opp'n at 375.) Further, the government represents that its inquiries relative to exhaustion reveal that Malone's administrative request for a compassionate release was denied by the warden of his facility on June 5, 2020. (*Id.*, citing Doc.

No. 42-1 at 384.) The warden's denial included instructions for appealing the decision.[1] (Doc. No. 42-1 at 384.)

As the Court has previously noted in response to similar motions, the sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington,* 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston,* 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross,* 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act of 2018 (FSA) amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

---

[1] In denying his administrative request for a compassionate release, the warden explained that Malone's concern about potential exposure to COVID-19 did not warrant release under the BOP Guidelines. (Doc. No. 42-1 at 384.) The warden further noted that Malone had been reviewed for possible home confinement under the CARES Act but was determined to be "ineligible due to [his] current conviction of a crime of violence." (*Id*.).

Malone claims that he has now satisfied the statutory exhaustion requirements because the warden has denied his request. There is a split in authority on the question of whether the exhaustion requirement is satisfied simply by making a formal initial request and allowing thirty days to elapse prior to filing suit (regardless of the outcome of the initial request), or whether a response by the warden within 30 days "eliminat[es] the elapse of thirty (30) days as a path to judicial review because this denial, unlike an implicit denial, can be appealed administratively." *See United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *3 (E.D. Tenn. May 13, 2020) (finding inmate who had his administrative request for compassionate release denied by the warden within 30 days was required to fully exhaust administrative remedies before filing suit); *see also United States v. Fields*, No. 3:12-cr-00022-JKS-1, 2020 WL 2744109, at *4–5 (D. Alaska May 6, 2020) (noting the split in authority and collecting cases).

The Sixth Circuit appears to have weighed in on this debate over statutory interpretation in favor of finding that the passage of thirty days, regardless of the availability of administrative appeals, triggers an inmate's right to proceed in federal court. *See United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *3 (6th Cir. June 2, 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, *no matter the appeals available to them*.") (emphasis added). Malone represented in his May 1, 2020 motion that he had already filed a written administrative request with the warden. (Mot. at 346.) In light of the Sixth Circuit's ruling in *Alam*, the Court finds that the passage of 30 days since Malone initiated the administrative process is sufficient to satisfy the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A), regardless of whether he appealed the warden's ruling, and the Court may reach the merits of Malone's motion.

**B.     Availability of Compassionate Release**

There are three components to a compassionate release merits analysis: (1) whether extraordinary and compelling reasons warrant a reduction in sentence, as described by the United States Sentencing Commission; (2) whether the § 3553(a) factors—"to the extent that they are applicable"—render the reduction inappropriate; and (3) whether defendant would be a danger to the public.

1.     <u>Extraordinary and Compelling Circumstances</u>

Malone reports that he has "no recorded medical issues," but he observes that the coronavirus "shows no bias and has killed completely health men and women, young and old alike[.]" (Mot. at 347.) He also suggests, without support, that he has been "borderline hypertensive for years with a history of hypertension in [his] family." (*Id*.)

The applicable policy statement issued by the United States Sentencing Commission, § 1B1.13 of the U.S.S.G., explains that extraordinary and compelling reasons may exist where the defendant is "suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I)[2]. The Court also finds that U.S.S.G. § 1B1.13 cmt. n.1(D) applies in this case. That provision mandates that, "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the

---

[2] An inmate can also demonstrate a medical condition that satisfies the existence of an extraordinary and compelling reason requirement if he can show he is "suffering from a terminal illness," suffering from a serious functional or cognitive impairment," or he is "experiencing a deteriorating physical or mental health because of the aging process." 18 U.S.C. § 1B1.13(1)(A) cmt. 1(A)(i) and (ii)(II), (III). Malone is 38 years old and does not argue that he suffers from a medical condition that would fall into any of these categories, nor would the record support such a finding.

other reasons enumerated in U.S.S.G. § 1B1.13 cmt. n.1. While the section refers to a BOP determination, the Sentencing Commission's policy statement was not amended after the enactment of the FSA. Consequently, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release … because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, No. 89-CR-0655, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 447, 499 (S.D. Iowa 2019) (collecting district court cases)). Given this lack of applicable guidance, courts have held that they are not constrained by prior Commission policy statements as to what constitutes extraordinary and compelling reasons for a sentence reduction. *See United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (noting that "a majority of district courts have concluded that the old policy statement provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)") (quotation marks and citations omitted); *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("In short, federal judges are no longer constrained by prior Commission policy statements as to what constitutes extraordinary and compelling reasons for a sentence reduction. *See United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (noting that "a majority of district courts have concluded that the old policy statement provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)") (quotation marks and citations omitted); *United States v.*

*Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.")

Further, in light of the unprecedented circumstances surrounding the COVID-19 pandemic, "[n]umerous courts have recently concluded that 'extraordinary and compelling reasons' exist for purposes of § 3582(c)(1)(A) where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19." *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020); *see Bolze*, 2020 WL 2521273, at *7 (noting that "a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19").

In its opposition, the government does not seriously dispute that an inmate with an established risk factor for COVID-19 identified by the Centers for Disease Control and Prevention ("CDC") could satisfy the standard of "extraordinary and compelling reasons," provided the condition reasonably could be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if the condition would not support such a finding absent the risk of COVID-19. *See* U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I)). Instead, the government argues that Malone's "self-diagnosis" of "borderline hypertensive" and his family history of hypertension, do not satisfy Malone's burden of establishing the existence of extraordinary and compelling circumstances. (Opp'n at 378.) The Court agrees.

7

The CDC has identified individuals with "pulmonary hypertension" as having an increased risk of being seriously ill from COVID-19; it does not, however, include within this group those who are "borderline hypertensive" or those who have a family history of hypertension.[3] Moreover, Malone fails to explain what he means by "borderline hypertensive," and, in any event, he offers no documentation or support for his claim.[4] The Court agrees with the government that Malone has not met his burden of demonstrating the existence of an extraordinary and compelling reason for compassionate release. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) (The defendant has the burden to show that he is entitled to a sentence reduction); *see also United States v. Solis*, 16-015-CG-MU, 2019 WL 2518452, at *3 (S.D. Ala. June 18, 2019) (inmate has not shown he is entitled to compassionate relief because, among other things, "his motion wholly fails to indicate, much less provide documentation, that [his] medical conditions qualify him for compassionate release"). For this reason alone, his motion for immediate release is properly denied. *See, e.g., United States v. Clark*, No. 3:13-cr-163-FDW-1, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (denying motion for compassionate release, in part, because inmate failed to substantiate claims that medical conditions placed defendant at a heightened risk with respect to COVID-19).

But even assuming that Malone's "borderline hypertension" and family history of hypertension could possibly rise to the level of extraordinary and compelling reasons for

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (listing heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension as heart conditions that may put people at higher risk for severe illness from COVID-19) (last visited 6-2-2020).

[4] It is worth noting that, in his denial of Malone's request for a compassionate release, the warden indicated that a review of Malone's medical records revealed that Malone was "not presently being treated for any chronic medical illness . . . nor [was he] receiving any medications, [and that] FCI Danbury is able to continue to manage [his] medical needs." (Doc. No. 42-1 at 384.)

8

compassionate release, this would not end the analysis, as the Court would next consider the § 3553(a) factors.

2. § 3553(a) Factors and the Danger to the Community

Malone concedes that he is currently serving time for a "violent" offense. (Mot. at 346.) But he insists that he has not "and will never harm anyone, [and that he is] a man forever changed by" his time in prison. (*Id.*) During that time, he represents that has had no disciplinary infractions, and he includes documentation showing the programming he has completed while incarcerated. (*Id*. at 346, 348.) He also underscores the fact that "prior to [the present] charge, [he] had no criminal history." (*Id*. at 346.) But the compassionate release statute directs courts to consider all of the 18 U.S.C. § 3553(a) sentencing factors "to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). Other applicable factors would include the nature and circumstances of the offense, and the need for the sentence imposed (to reflect the seriousness of the offense; afford adequate deterrence; protect the public; and provide the defendant with needed education, training, and treatment). Additionally, the Court may only order a compassionate release if it finds that Malone "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2).

In his official capacity as a police officer, Malone violated the trust of and inflict harm upon the very public he was sworn to "serve and protect" to benefit himself and others. Malone received a significant sentence (71 months) for his crimes. The fact that he had no history of criminal activity prior to the present case has already been reflected in the sentence he received. The Court finds that shortening the sentence further to time-served would undermine the need for the sentence imposed to reflect the seriousness of the crimes committed. Additionally, the Court

finds that, because of the nature and the circumstances surrounding Malone's offense, he remains a risk of danger to the community. Finally, while the Court commends Malone for his good behavior in prison and his efforts to participate in courses and training that will assist him when he does transition back into society, granting a release on the basis of "rehabilitation" alone is prohibited by statute, *see* 28 U.S.C. § 994(t), and the Court finds no other compelling reason to grant Malone a compassionate release. *See also* U.S.S.G. § 1B1.13.

The Court is sympathetic to Malone's fear that he will contract COVID-19 in prison. Nonetheless, the Court finds that the § 3553(a) sentencing factors, as well as the danger he continues to pose to the community, counsel against granting him a compassionate release.

### C. Recommendation for RRC Placement

Malone also complains that, despite the fact that he has less than twelve (12) months left to serve on his sentence, he has not been placed in a halfway house or otherwise designated for placement at a Residential Reentry Center ("RRC"). (Mot. at 346.) The BOP, pursuant to 18 U.S.C. § 3624(c)(1) as amended by the Second Chance Act, Pub. L. No. 110-199, § 251(a), 122 Stat. 657 (2008), may place an inmate in community confinement for no longer than twelve months at the end of his or her sentence. *See Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009). While a court may make non-binding recommendations for placement in an RRC or home confinement, the BOP has the exclusive authority to determine if an inmate should be placed in such a setting and, if so, for how long. 18 U.S.C. § 3621(b); *see Martin v. United States*, No. 05-17, 2008 WL 3546433, at *1–2 (W.D. Pa. Aug. 12, 2008).

The First Step Act modified § 3624 to further explain who was eligible for prerelease custody. Pub. L. No. 115-391, § 102. The Act elaborates on the risk reassessment levels needed

for a prisoner to be considered for prerelease custody. *Id.* It also details the types of prerelease custody, which include home confinement and placement in an RRC. *Id.* However, it did not modify the requirement that the BOP, not the Court, make the decision to place a prisoner on home confinement or in an RRC. *See* 18 U.S.C. § 3624(b)(1) & (c)(1); *Heard v. Quintana*, 184 F. Supp. 3d 515, 520 (E.D. Ky. 2006) (explaining that the BOP may consider placing a federal inmate in home confinement or an RRC). Further, the First Step Act did not alter the fact that the Second Chance Act does not guarantee RRC placement or home confinement, it only directs the Director of the BOP to consider it. *See Demis*, 558 F.3d at 514.

The BOP's decision whether to place a prisoner in home confinement or in an RRC at the end of his sentence is guided by five factors set forth in 18 U.S.C. § 3621(b). One of those factors is any statement from the sentencing court. § 3621(b)(4). Accordingly, the sentencing court is permitted, where appropriate, to make a non-binding recommendation to the BOP, and the Court shall construe Malone's motion as also requesting a non-binding recommendation for RRC placement. But, for the same reasons the Court determined that Malone is not entitled to a compassionate release, the Court finds that it would be inappropriate to recommend him for early RRC placement.

11

### III. CONCLUSION

For the foregoing reasons, as well as the reasons in the government's brief opposing compassionate release, Malone's motion for a compassionate release is DENIED. The Court also elects not to recommend Malone for early RRC placement.

**IT IS SO ORDERED**.


Dated: June 18, 2020

                                            **HON. SARA LIOI**
                                            **U.S. DISTRICT JUDGE**